IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

JANET GRAHAM, Administratrix of
The Estate of Edna Marie McNeely,

    Plaintiff,

v.                                  CIVIL ACTION NO. 1:18-00274

SUNIL KUMAR DHAR, M.D.,
BLUEFIELD CLINIC COMPANY, LLC,
d/b/a BLUEFIELD CARDIOLOGY, and,
BLUEFIELD HOSPITAL COMPANY, LLC,
d/b/a BLUEFIELD REGIONAL MEDICAL CENTER,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is defendant Bluefield Hospital Company, LLC, d/b/a Bluefield Regional Medical Center ("BRMC")'s motion for summary judgment. ECF No. 77. For the reasons that follow, the motion for summary judgment is **GRANTED**, and plaintiff's remaining claim in the Complaint against defendant BRMC – Count III - is **DISMISSED** with prejudice.

I.    **Factual and Procedural Background**

On October 6, 2017, plaintiff Janet Graham (hereinafter "plaintiff"), Administratrix of the Estate of Edna Marie McNeely, filed a medical professional liability lawsuit against BRMC and co-defendant, Dr. Sunil Kumar Dhar, relative to Edna Marie McNeely's (hereinafter "patient" or "Mrs. McNeely")

hospitalization at BRMC in March of 2016.  See ECF No. 1-1.
Plaintiff's Complaint originally contained two (2) counts
against BRMC.  Id.  Plaintiff's stated claims against BRMC were:
(1) for medical negligence while Mrs. McNeely was a patient at
BRMC in March of 2016 (Count III); and (2) for violation of the
West Virginia Consumer Credit and Protection Act (Count IV).
Id.  Only Count III of plaintiff's Complaint — the medical
negligence claim — currently remains against BRMC, as Count IV
was dismissed by the plaintiff.[1]  Plaintiff's Complaint in Count
III alleges that, "as a direct and proximate result of the . . .
negligence of defendant BRMC, the decedent sustained severe
physical injuries, tremendous suffering and pain . . . and other
compensable injuries and damages."  Id. at ¶ 49.

On April 12, 2019, plaintiff timely filed Rule 26(a)(2)(A)
and (B) Expert Disclosures in this matter.  See ECF No. 54.
Plaintiff named Scott J. Denardo, M.D., as her liability expert
in this matter.  Dr. Denardo authored a preliminary report in
this matter and issued opinions regarding BRMC's deviations in
the standard of care.  Dr. Denardo testified that BRMC deviated
from the applicable standard of care in the following three
ways: (1) for not mentoring defendant Sunil Kumar Dhar, M.D.,

---

[1] Pursuant to an agreed stipulation by the parties, Count IV was dismissed with prejudice on July 24, 2018.  See ECF No. 38.

2

due to the amount of procedures he had performed prior to Edna McNeely's procedure in March 2016; (2) for not declaring Edna McNeely's circumstances as a sentinel event, requiring peer review; and (3) for failing to comply with the West Virginia Cardiac Catheterization Standards related to patient transfer.[2] See ECF No. 78-2 at ¶¶ 7, 9. At his deposition, Dr. Denardo was questioned by BRMC's counsel as to his opinions contained in his preliminary report relating to BRMC's breaches of the standard of care.

---

[2] The West Virginia Cardiac Catheterization Standards state, in relevant part, that "[a]ll applicants proposing to provide Therapeutic Cardiac Catheterization services without on-site Cardiac Surgery services must demonstrate all of the following: . . . (7) There must be formalized written protocols in place for immediate (within 1 hour) and efficient transfer of patients to a cardiac surgical facility . . . . The one-hour time period may only be extended by the board for geographically remote facilities."  See https://hca.wv.gov/certificateofneed/Documents/CON_Standards/CardiacCath.pdf, at ¶ IV.C.7.

The Standards explain that the transfer time is calculated as "[t]he time from when the referring facility initiates contact with the receiving facility . . . to the time the patient arrives at the receiving facility, including the actual transport time."  Id. at ¶ 1.F.

The record contains no evidence that the one-hour time period was extended for BRMC by the West Virginia Health Care Authority Board due to BRMC's location in a geographically remote facility.  Therefore, for the purposes of this summary judgment motion, the court will assume that the standard of care applicable to BRMC was the standard transfer time of one hour.

BRMC's counsel first asked the following question related to Dr. Denardo's opinion that BRMC deviated from the applicable standard of care by not mentoring defendant Dr. Dhar:

> Q: Okay. And you'd agree with me that whether Dr. Dhar was mentored or not did not play an ultimate role in this case, did it?
>
> A: Yes.

See ECF No. 81-2 at p. 74, lines 19-22.

Second, BRMC's counsel questioned Dr. Denardo with respect to his opinion regarding BRMC's deviation in the standard of care for not declaring Edna McNeely's circumstances as a sentinel event, requiring peer review:

> Q. And then on Page 5 of your report, Paragraph B there, it talks about peer review for PCI procedures, and whether peer review was conducted on Ms. McNeely's case or not. You would certainly agree with me that whether peer review was conducted after this case or not played no role in her death?
>
> A. Well, conceptually, peer review, one of the major points is to avoid future complications. So if a peer reviewed process is in this place, it would diminish the chances of a bad outcome. I think that's the whole intent.
>
> Q. Right. But the -- they couldn't have peer reviewed Ms. McNeely's case . . . until after she left the hospital . . . and died. Correct?
>
> A: Right. Right. Right.
>
> Q: So whether they, in fact, peer reviewed this case or not did not play a role in her death. You'd agree with that?

4

>    A:   True.

See id. at p. 77, lines 9-24, p. 78, lines 1-6.

Third, BRMC's counsel questioned Dr. Denardo regarding his opinions on Mrs. McNeely's probability of survival had she been transferred sooner from BRMC.

>    Q:   Well, you know, ultimately that gets to the -- are you able to ascribe any of these probabilities in terms of percentages?
>
>    A.   Well, I thought about that. I think that if she -- I've thought about it in different time points. For example, at 9:30 in the evening, I think her chance of survival was at least 50 percent or more had she been transferred right at that point and aggressively transfused. And in my mind -- and this is not based on any research article, but just kind of based on my experience. I think about every hour, her chance of survival decreased by about 10 percent. So at 10:30, it was more like 40 percent, at 11:30, 30 percent…

See id. at p. 67, lines 13-24, p. 68, line 1.

The record reflects that the request to transfer Mrs. McNeely was made at 9:35 p.m., see ECF No. 81-3, but that she was not transferred until 12:24 a.m. the next day and did not arrive at Carilion Roanoke Memorial Hospital until 12:53 a.m. See ECF No. 81-4.

Lastly, in his deposition, Dr. Denardo testified that his written report contains all of his opinions against BRMC. Specifically, Dr. Denardo answered as follows:

>    Q:   With regard to the report that you've got in front of you, the report that you prepared dated April 12,

5

>     2019, does this contain all of the opinions that you
>     intend to offer against Bluefield Regional Medical
>     Center[?]
>
> A:  Unless new information comes to light.
>
> Q:  But as we sit here now, you're bound by the opinions
>     in this report:
>
> A:  Yes.

See ECF No. 81-2 at p. 78, lines 15-24, p. 79, line 1.

On October 21, 2019, defendant BRMC filed a Motion for Summary Judgment. ECF No. 77. BRMC argues that plaintiff has failed to present expert testimony on causation with respect to BRMC, which is required by W. Va. Code §55-7B-3, and therefore plaintiff has failed to make a prima facie case against BRMC. See ECF No. 78. The issue has been fully briefed by plaintiff and BRMC, and is ripe for review by the court.

## II. Governing Law

### A. Summary Judgment Standard

In evaluating summary judgment motions, Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

6

(1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, a reasonable juror could return a verdict for the non-movant. Id.

The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). This burden can be met by showing that the nonmoving party has failed to prove an essential element of the nonmoving party's case for which the nonmoving party will bear the burden of proof at trial. Id. at 322. If the moving party meets this burden, according to the United States Supreme Court, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

If the moving party meets its burden, then the non-movant must set forth specific facts that would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. Id. at 322-23.

B.  Standards for Medical Negligence Claims

"In West Virginia, the Medical Professional Liability Act ("MPLA") controls medical malpractice claims." Wallace v. Cmty.

Radiology, 2016 WL 1563041, at *6 (S.D.W. Va. Apr. 18, 2016) (Faber, J.) (citing Dreenen v. United States, 2010 WL 1650032, at *2 (4th Cir. 2010)). Pursuant to the MPLA, in order to make a prima facie case of medical negligence, a plaintiff must demonstrate both a breach in the standard of care and that the breach was a proximate cause of the injury or death. Specifically, W. Va. Code § 55-7B-3 states as follows:

> (a) The following are necessary elements of proof that an injury or death resulted from the failure of a health care provider to follow the accepted standard of care:
>
> > (1) The health care provider failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and
> >
> > (2) Such failure was a proximate cause of the injury or death.
>
> (b) If the plaintiff proceeds on the "loss of chance" theory, i.e., that the health care provider's failure to follow the accepted standard of care deprived the patient of a chance of recovery or increased the risk of harm to the patient which was a substantial factor in bringing about the ultimate injury to the patient, the plaintiff must also prove, to a reasonable degree of medical probability, that following the accepted standard of care would have resulted in a greater than twenty-five percent chance that the patient would have had an improved recovery or would have survived.

W. Va. Code § 55-7B-3.

When a medical negligence claim involves an assessment of whether the plaintiff was properly diagnosed and treated, or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required. Wallace, 2016 WL 1563041, at *7.

**III. Analysis**

According to BRMC, plaintiff cannot prevail on her MPLA claim against BRMC because she cannot establish the essential elements of her case – namely, that plaintiff cannot establish by expert testimony that BRMC's alleged breach of care was a proximate cause of the patient's death. BRMC alleges that nowhere in his report did Dr. Denardo provide expert testimony regarding causation relevant to BRMC. Plaintiff counters that Dr. Denardo's opinion relating to the patient's probability of survival had she been transferred sooner from BRMC, given in his deposition testimony, creates a genuine issue of material fact as to BRMC being a proximate cause pursuant to the "loss of chance" theory, and thus summary judgment is inappropriate. BRMC responds that Dr. Denardo's discussion of the patient's probability of survival should not be understood as being offered against BRMC, and reasserts that Dr. Denardo confirmed that all of his opinions against BRMC can be found in paragraphs 7 and 9 of his expert report dated April 12, 2019.

9

For the court to grant summary judgment in favor of defendant BRMC, the court must find that Dr. Denardo provided no opinion testimony that any of BRMC's breaches of the standard of care were a proximate cause of the patient's injury or death. See W. Va. Code §§ 55-7B-3, 55-7B-7. The court finds that, relating to the first two alleged breaches of the standard of care by BRMC - (1) not properly mentoring Dr. Dhar; and (2) not declaring Edna McNeely's circumstances as a sentinel event, requiring peer review – there not only is no expert testimony of causation, but Dr. Denardo in fact testified at his deposition that BRMC's breaches were not proximate causes of the patient's death. Dr. Denardo agreed that BRMC's improper mentoring of Dr. Dhar was not a proximate cause of the patient's injuries, see ECF No. 81-2 at p. 74, lines 19-22, and agreed that because peer review only occurs after the incident has concluded, the lack of peer review could not be a proximate cause here either. See id. at p. 77, lines 9-24, p. 78, lines 1-6. Therefore, as to these two alleged breaches of the standard of care, plaintiff has not proved an essential element of her claim of medical negligence, and summary judgment for defendant BRMC is appropriate.[3]

---

[3] Plaintiff, in her Response to BRMC's Motion to Dismiss, seems to concede that she has put forward no expert testimony of proximate causation regarding either BRMC's lack of proper mentoring or the lack of peer review. See ECF No. 81. Instead,

That leaves the court with determining whether there is any genuine issue of material fact relating to BRMC's third breach of the standard of care – that BRMC failed to comply with the one-hour catheterization standard for patient transfer. Assuming without deciding that Dr. Denardo's deposition testimony as to Mrs. McNeely's probability of survival was offered against BRMC and does qualify as "loss of chance" expert testimony pursuant to W. Va. Code § 55-7B-3(b), summary judgment is still warranted in defendant BRMC's favor because Dr. Denardo's testimony does not result in BRMC being responsible for a greater than 25% loss of chance of survival.[4]

According to the loss of chance testimony given by Dr. Denardo, every hour from 9:30 p.m. onward that the patient was not transferred cost the patient a 10% loss in chance of survival, starting from an approximate 50% chance of survival at 9:30 p.m. The decision to transfer Mrs. McNeely was made at 9:35 p.m., when she had an approximate 49.17% chance of

---

plaintiff presents counterargument only as to why there is expert testimony of proximate cause involving BRMC's alleged breach of the standard of care for patient transfer. See id.

[4] Because the court has determined that BRMC is entitled to judgment in their favor on the ground discussed herein, it has not reached the other defenses raised by BRMC in support of its motion for summary judgment.

11

survival.[5] If BRMC had adhered to the standard of care for catheterization patient transfer of ensuring patient arrival at a cardiac surgical facility within one hour, Mrs. McNeely would have thus arrived at Carilion Roanoke Memorial Hospital by 10:35 p.m. – one hour after 9:35 p.m. – when her chance of survival would be 39.17%.[6] Instead, due to BRMC's negligence, Mrs. McNeely arrived at Carilion Roanoke Memorial Hospital at 12:53 a.m., when her chance of survival would be 16.17%.[7] BRMC's negligence caused a loss of chance of survival equal to the difference between the chance of survival at the time that Mrs. McNeely would have arrived had no negligence occurred (39.17%)

---

[5] 9:35 p.m. is five minutes after 9:30 p.m. At the given rate of 10% loss of chance of survival per hour, every five-minute period decreases the chance of survival by 0.83%. 50% - 0.83% = 49.17%. The court notes that in making this and the following calculations, it is following the opinion implicit in Dr. Denardo's testimony that the patient's chance of survival decreased in a linear fashion.

[6] 10:35 p.m. is one hour after 9:35 p.m. At the given rate of 10% loss of chance of survival per hour, every hour-long period decreases the chance of survival by 10%. 49.17% - 10% = 39.17%.

[7] 12:53 a.m. is three hours and eighteen minutes after 9:35 p.m. At the given rate of 10% loss of chance of survival per hour, this means that she lost 10% (first hour) + 10% (second hour) + 10% (third hour) + 3% (eighteen minutes) = 33%. 49.17% - 33% = 16.17%.

versus the chance of survival at the time that she actually arrived (16.17%).[8]

Therefore, BRMC's negligence cost Mrs. McNeely a 23% chance of survival,[9] which is below the 25% threshold required by law to state a claim under the § 55-7B-3(b) "loss of chance" theory.[10]

---

[8] It is correct to calculate the loss of chance of survival only between 10:35 p.m. and 12:53 a.m., and incorrect to calculate the loss of chance of survival between 9:35 p.m. and 12:53 a.m., because the loss of chance relevant to the statutory requirement is a loss of chance due to the defendant's negligence not following the standard of care. See W. Va. Code § 55-7B-3. The standard of care called for the patient to arrive at Carilion Roanoke Memorial Hospital by 10:35 p.m. The patient did not actually arrive until 12:53 a.m. Thus, BRMC's breach is the amount of time between 10:35 p.m. and the time the patient actually arrived at the transferee hospital.

[9] 39.17% - 16.17% = 23%.

[10] The court interprets W. Va. Code § 55-7B-3(b) as requiring a 25% *change in outcome* between the chance of survival had the standard of care been followed and the chance of survival experienced due to the breach of the standard of care. The court does not interpret § 55-7B-3(b) to mean that the "loss of chance" theory is applicable in all cases where following the standard of care results in a pure chance of survival greater than 25%. In interpreting the statute this way, the court is in line with other courts' readings of the provision as considering relative, rather than absolute, outcomes. See, e.g., Wilkinson v. United States, 2017 WL 1197823, at *3 (S.D.W. Va. Mar. 30, 2017) (Copenhaver, J.) (discussing how the *decrease* in prognosis needs to be above 25%, not how the resulting end prognosis itself needs to be above 25%); Bunner v. United States, 2016 WL 1261151, at *11-12 (S.D.W. Va. Mar. 30, 2016) (Johnston, J.) (discussing how the defendant's negligence deprived the plaintiff of a greater than 25% chance of a *better* outcome).

The court's interpretation also aligns with the rational understanding of the implications of the provision. If the

Thus, the plaintiff as the nonmoving party has failed to prove an essential element of its case for which it would bear the burden of proof at trial, and therefore summary judgment in favor of defendant BRMC is mandated. <u>Wallace v. Cmty. Radiology</u>, 2016 WL 1563041, at *9 (S.D.W. Va. Apr. 18, 2016) (Faber, J.).

**IV. <u>Conclusion</u>**

For the reasons expressed above, defendant BRMC's motion for summary judgment, ECF No. 77, is **GRANTED,** and the Count III claim by plaintiff against defendant BRMC is thus **DISMISSED** with prejudice.

The Clerk is directed to send copies of this Memorandum Opinion and Order to all counsel of record.

IT IS SO ORDERED this 19th day of December, 2019.

                                      Enter:

                                      David A. Faber
                                      Senior United States District Judge

---

"loss of chance" theory is to apply whenever the chance of survival is greater than 25% had the standard of care been followed, this would allow liability in cases where the actual effect of the defendant's negligence may be incredibly slight. For example, liability could be so imposed if the chance of survival without breach was 25.01% and the chance of survival due to negligence was 24.99%. This is an irrational result, and the court will not interpret the provision in such a manner.