IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

JANET GRAHAM, Administratrix of
The Estate of Edna Marie McNeely,

    Plaintiff,

v.                                    CIVIL ACTION NO. 1:18-00274

SUNIL KUMAR DHAR, M.D.,
BLUEFIELD CLINIC COMPANY, LLC,
d/b/a BLUEFIELD CARDIOLOGY, and,
BLUEFIELD HOSPITAL COMPANY, LLC,
d/b/a BLUEFIELD REGIONAL MEDICAL CENTER,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is plaintiff's motion for this court to reconsider its earlier judgments, (ECF Nos. 93 and 94), pursuant to Federal Rule of Civil Procedure 59(e).  (ECF No. 97.)  For the reasons that follow, plaintiff's motion to reconsider is **DENIED**.

    I.  **Background**

This action is a medical malpractice lawsuit by plaintiff Janet Graham (hereinafter "plaintiff"), Administratrix of the Estate of Edna Marie McNeely, against Defendant Bluefield Regional Medical Center ("BRMC") and co-defendant Dr. Sunil Kumar Dhar, arising out of Edna Marie McNeely's hospitalization at BRMC in March of 2016.  (See ECF No. 1-1.)  The complete

factual and legal history of this action is detailed in the Court's previous orders, (ECF Nos. 93 and 94), and thus need not be repeated here.

Most relevant to the present motion are the two Memorandum Opinion and Orders issued by this court on December 19, 2019. The first denied plaintiff's motion for sanctions and entry of default judgment, (ECF No. 93), and the second granted BRMC's motion for summary judgment. (ECF No. 94.) On January 15, 2020, plaintiff filed the instant motion for the court to alter and amend its earlier judgments, pursuant to Federal Rule of Civil Procedure 59(e). (ECF No. 97.) Defendant BRMC filed a response in opposition to plaintiff's motion on January 29, 2020, (ECF No. 100), and plaintiff filed her reply on February 5, 2020. (ECF No. 101.) As such, the motion is fully briefed and ripe for adjudication.

## II. **Legal Standard**

"A Rule 59(e) motion may only be granted in three situations: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Mayfield v. NASCAR, Inc., 674 F.3d 369, 378 (4th Cir. 2012).

"Rule 59(e) motions may not be used . . . to raise arguments which could have been raised prior to the issuance of

2

the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998). A movant's "mere disagreement" with the Court's legal application "does not support a Rule 59(e) motion." Hutchinson v. Staton, 994 F.2d 1076, 1082 (4th Cir. 1993).

The circumstances under which Rule 59(e) motions may be granted are so limited that "[c]ommentators observe 'because of the narrow purposes for which they are intended, Rule 59(e) motions typically are denied.'" Woodrum v. Thomas Mem'l. Hosp. Found., Inc., 186 F.R.D. 350, 351 (S.D.W. Va. 1999) (citation omitted). "It is an extraordinary remedy that should be applied sparingly." Mayfield, 674 F.3d at 378.

### III. Analysis

#### a. Plaintiff's Arguments

Plaintiff bases both grounds of her Rule 59(e) motion on the third situation in which Rule 59(e) may be invoked – to correct a clear error of law or prevent manifest injustice. Specifically as to the court's ruling granting BRMC's motion for summary judgment, plaintiff argues that the court contradicted the clear statutory text of W. Va. Code § 55-7B-3(b) when it granted summary judgment in favor of BRMC. The relevant language of the statute is reproduced below:

3

> If the plaintiff proceeds on the "loss of chance" theory, *i.e.*, that the health care provider's failure to follow the accepted standard of care deprived the patient of a chance of recovery or increased the risk of harm to the patient which was a substantial factor in bringing about the ultimate injury to the patient, the plaintiff must also prove, to a reasonable degree of medical probability, that following the accepted standard of care would have resulted in a greater than twenty-five percent chance that the patient would have had an improved recovery or would have survived.

W. Va. Code § 55-7B-3(b). Plaintiff essentially contends that the "twenty-five percent chance" in this text is an absolute threshold; that if a patient would have had a 25.01% chance of survival, but due to a defendant's negligence the patient's chance of survival drops to 24.99%, then a plaintiff has met its burden of proof. Here, the court found – and plaintiff does not disagree with these calculations – that Mrs. McNeely would have had a 39.17% chance of survival, but due to BRMC's negligence, Mrs. McNeely had only a 16.17% chance of survival. Thus, according to plaintiff, BRMC's negligence caused Mrs. McNeely's chance of survival to drop below the 25% absolute threshold.

As to the court's denial of her motion for sanctions, plaintiff argues that plaintiff's non-compliance with Local Rule of Civil Procedure 37.1(b) does not prevent plaintiff from nonetheless prevailing on her motion for sanctions. Plaintiff cites Hanshaw v. Wells Fargo Bank, N.A., 2014 WL 4063828, at *3 (S.D.W. Va. Aug. 14, 2014), to state that "the Federal Rules of Civil Procedure and the Local Rules do not provide that failure

4

to meet and confer automatically results in denial of the motion. Rather, the sanction for failing to meet and confer is the denial of a request for expenses incurred in making a motion, including attorney's fees." Id. Thus, plaintiff argues that this court should alter and amend its earlier Order to deny an award of attorney fees and costs while still considering the merits of plaintiff's motion for sanctions. Plaintiff also challenges the court's reliance upon Scott Hutchison Enterprises, Inc. v. Cranberry Pipeline Corp., 318 F.R.D. 44, 51 (S.D.W. Va. 2016), arguing that plaintiff's counsel's Topic 9 conversations with BRMC's counsel do satisfy Local Rule 37.1(b)'s meet and conferral requirement.

### b. Review of Granting Motion for Summary Judgment

The court's initial interpretation of W. Va. Code § 55-7B-3(b) was not clearly erroneous. Plaintiff's argument that the statutory text is clear, and thus this court is bound to follow it, is incorrect.

The court agrees with plaintiff that in interpreting statutory provisions, courts should look first to the text itself. See Appalachian Power Co. v. State Tax Dep't of W. Va., 195 W. Va. 573, 587, 466 S.E.2d 424, 438 (1995) ("We look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must

5

prevail and further inquiry is foreclosed."). However, the text is not as clear as plaintiff claims.

The first clause of the relevant provision explains the loss of chance theory: it is available when a defendant's negligence "deprived the patient of a chance of recovery or *increased the risk of harm* to the patient which was a *substantial factor* in bringing about the ultimate injury." W. Va. Code § 55-7B-3(b) (emphasis added). First, while Mrs. McNeely did die from her injuries, BRMC's negligence did not completely deprive her of a chance of recovery; as previously stated, she had a 16.17% chance of survival/recovery. The text then considers the situation where a defendant's negligence was a "substantial factor" that "increased the risk of harm." Id. Thus, the burden of proof that the statute imposes in its next several clauses (the 25% language) is based upon ensuring that the alleged negligence was indeed a substantial factor that increased the risk of harm. Plaintiff's argument that the statute should be interpreted as making a 25% chance of survival an absolute threshold is inconsistent with this language that the negligence be "substantial." For as previously stated, under plaintiff's interpretation, if a patient would have had a 25.01% chance of survival, but due to a defendant's negligence the patient's chance of survival drops to 24.99%, then a plaintiff has met its burden of proof because "follow[ing] the

6

accepted standard of care would have resulted in a greater than twenty-five percent chance that the patient . . . would have survived." Id.

The change from 25.01% to 24.99% cannot plausibly be considered substantial.  Therefore, even if plaintiff were correct in her interpretation, this textual inconsistency at minimum demonstrates that the text is not clear.  See Crockett v. Andrews, 153 W. Va. 714, 718, 172 S.E.2d 384, 386 (1970) ("A statute is open to construction . . . [if] reasonable minds might be uncertain or disagree as to its meaning.").

After applying other rules of statutory interpretation to W. Va. Code § 55-7B-3(b), the court again concludes that it did not commit any clear error in its initial interpretation. Section 55-7B-1 contains the legislative purpose in its creation of the Medical Professional Liability Act, of which § 55-7B-3 is a part.  See W. Va. Code § 55-7B-1.  The court finds that this statement of purpose and other legislative history provide no assistance to interpreting § 55-7B-3(b).  However, another court in this district has explained the history behind the loss of chance statute:

> In 2003, West Virginia also codified a separate causation standard under a "loss of chance theory." The 2003 amendment ad[d]s clarity to and further defines the loss of chance theory set forth in Thornton v. CAMC, Etc., 172 W. Va. 360 (1983) which stated that:

7

> Where a plaintiff in a malpractice case has demonstrated that a defendant's acts or omissions have increased the risk of harm to the plaintiff and that such increased risk of harm was a substantial factor in bringing about the ultimate injury to the plaintiff, then the defendant is liable for such ultimate injury.
>
> Thornton, 172 W. Va. at 361.  Under the loss of chance theory, the 2003 amendment requires a plaintiff to prove "that the health care provider's failure to follow the accepted standard of care deprived the patient of a chance of recovery or increased the risk of harm to the patient which was a substantial factor in bringing about the ultimate injury to the patient ... [.]"  W. Va. Code § 55-713-3(b).  Importantly, a plaintiff must "also prove, to a reasonable degree of medical probability, that following the accepted standard of care would have resulted in a greater than twenty-five percent chance that the patient would have had an improved recovery or would have survived."  (Id.)  In essence, the substantial factor concept now has a statistical minimum standard of proof.

Davis v. United States, 2012 WL 2681426, at *7-8 (S.D.W. Va. July 6, 2012) (Berger, J.).  The Davis court thus concluded that the statute was designed with the purpose of clarifying the loss of chance theory that had been adopted by West Virginia courts, and did so by creating a minimum standard of what a "substantial" loss of chance means.  See id.  This legislative intent again casts doubt upon plaintiff's absolute threshold approach (which would impose liability when survival chance drops from 25.01% to 24.99% due to negligence) because such an approach discounts the "substantial" aspect of the statute.  It also substantiates this court's initial interpretation of § 55-

7B-3(b) - that the 25% loss of chance provision is best understood as requiring a 25% chance of a better outcome.[1]  See also Bunner v. United States, 2016 WL 1261151, at *11 (S.D.W. Va. Mar. 30, 2016) (Johnston, J.) (burden of proof is met by showing "a greater than twenty-five percent chance of a better outcome.").

Moreover, while plaintiff has stated she is unaware of any case law which supports this court's interpretation of § 55-7B-3(b), plaintiff has not produced any cases that support her interpretation either.  The court looked first to the statutory text, but since it is unclear, the court looked to legislative history and intent and what a rational reading of the statute would imply.  In this absence of binding caselaw and upon the court's finding that the statute's text is unclear, the court's interpretation and application of § 55-7B-3(b) was neither clearly erroneous nor resulted in manifest injustice.  Therefore, plaintiff's motion asking this court to reconsider its earlier ruling granting summary judgment to BRMC is **DENIED**.

---

[1] The court interprets a 25% chance of a better outcome to mean that there must be at least a 25% difference between the chance of survival had the standard of care been followed and the chance of survival actually experienced due to the breach of the standard of care.

### c. Review of Denying Motion for Sanctions

Plaintiff has also not met her burden of showing the court was clearly erroneous or that manifest injustice resulted from its denial of plaintiff's motion for sanctions.

First, the court's decision to decline to find that the two Topic 9 conversations constituted a conferral sufficient to satisfy Local Rule 37.1(b) was not clearly erroneous. To the extent that the court was able to ascertain the contents and topics of these non-recorded conversations, the court did so by attentively and exhaustively examining the deposition transcripts and the parties' filings in the briefing on the motion for sanctions. The court was faced with a he said/she said dilemma as to one of the conversations, and made its findings based upon all the evidence and inferences available to it. The court found, based on all the evidence available to it, that no sufficient conferral occurred. Such a finding is not clearly erroneous.

Second, the court's decision to deny the motion for sanctions due to the failure to meet and confer was well within its discretion as supported by caselaw. "[T]he failure of a party to comply with L.R. Civ. P. 37.1(b) *may* provide a basis for the presiding judicial officer to deny a motion for sanctions." Scott Hutchison Enterprises, Inc. v. Cranberry Pipeline Corp., 318 F.R.D. 44, 51 (S.D.W. Va. 2016) (emphasis

added).  "[A] court has discretion in managing its discovery issues and must address motions for sanctions on a case-by-case basis."  Id.  Here, this court addressed plaintiff's motion for sanctions individually.  It found that, based on the circumstances of the case, factors which mitigated the need for compliance with Local Rule 37.1(b) were not present.  Therefore, the court, in its discretion and based on the factors of this case, used this failure to comply with Local Rule 37.1(b) as the basis for its denial of plaintiff's motion for sanctions.

It may be true that, as the court stated in Hanshaw, the Local Rules do not provide that failure to meet and confer *automatically* results in denial of a motion for sanctions.  See Hanshaw v. Wells Fargo Bank, N.A., 2014 WL 4063828, at *3 (S.D.W. Va. Aug. 14, 2014) (Johnston, J.); see also Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co., 246 F.R.D. 522, 526 (S.D.W. Va. 2007) (Stanley, J.) ("[T]he Federal Rules of Civil Procedure and the Local Rules do not provide that failure to meet and confer automatically results in denial of the motion.").  Nonetheless, the court did not automatically deny the motion due to plaintiff's failure to meet and confer.  Instead, the court looked at the particular factors in this case, weighed them accordingly, and in its discretion decided that the failure to meet and confer should result in a denial of the motion for sanctions.  The court was entitled as a matter of

11

law to come to this conclusion.  See Scott Hutchison, 318 F.R.D. at 51 ("[T]he failure of a party to comply with L.R. Civ. P. 37.1(b) may provide a basis for the presiding judicial officer to deny a motion for sanctions.").  Because the court denied plaintiff's motion for sanctions on procedural grounds, and so did not reach the merits of whether or not BRMC produced unprepared Rule 30(b)(6) witnesses in violation of Rule 37(d), the court declined to sanction BRMC.  Moreover, while a court may in its discretion order sanctions for violations of Rule 37 sua sponte, courts are not required to do so, and thus the court's decision to decline to do so is not clear error.  See Flame, S.A. v. Indus. Carriers, Inc., 2014 WL 4809842, at *6 (E.D. Va. Sept. 25, 2014) (noting that a court "has discretionary authority to award reasonable expenses under Rule 37 sua sponte").

Plaintiff has not provided any binding caselaw that the court's exercise of discretion here was clearly erroneous or a manifest injustice.  Instead, plaintiff's motion for this court to reconsider its earlier ruling on the motion for sanctions is based upon mere disagreement with this court's conclusion, and thus is **DENIED.**

## IV. Conclusion

For the foregoing reasons, plaintiff's motion for this court to reconsider its earlier judgments pursuant to Rule 59(e), (ECF No. 97), is **DENIED**.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.

IT IS SO ORDERED this 25th day of June, 2020.

ENTER:

David A. Faber
Senior United States District Judge